IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 1:09cr158-WKW |
| | ) | (WO) |
| JOSE LOZANO | ) | |

### OPINION AND ORDER

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), defendant Jose Lozano appeared for a detention hearing in this case on September 11, 2009. Pursuant to 18 U.S.C. § 3142(e)(1), the court must determine whether defendant may be released pending trial. If it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order the detention of the person before trial." Id.

Lozano, an alien born in Mexico, is charged in this court with reentering the United States without the consent of the Secretary of Homeland Security and the Attorney General in violation of 8 U.S.C. §§ 1326(a) and (b)(2) after a previous deportation as a result of his conviction for an aggravated felony.[1] The Immigration and Customs Enforcement (ICE) division of the Department of Homeland Security has given notice by means of an ICE detainer that defendant's "[d]eportation or removal from the United States has been ordered."

---

[1] "Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C.A. § 1227(a)(2)(A)(iii).

Ex. 1.[2] It is undisputed that, if the court were to release the defendant on conditions pursuant to the Bail Reform Act, he would be transferred to ICE custody by the U.S. Marshal, transported from this district, and placed immediately in removal proceedings. Further, defendant contends, and the government does not dispute, that because a deportation order has been issued against him, defendant will be detained until he is deported without the possibility of bond, once he is in the custody of immigration officials. See 8 U.S.C. §§ 1231(a)(1)(A), (a)(1)(B)(iii), and (a)(2) (providing for mandatory removal of the alien from the United States within a period of 90 days, to begin when the alien is released from detention or confinement; and for mandatory detention of the alien by the Attorney General during the removal period).

Facing inevitable deportation, Lozano understandably prefers immediate removal from the country to removal after a possible conviction on the instant charge and a potential sentence of up to 20 years' imprisonment. Accordingly, he seeks release under the Bail Reform Act. He intends to take his chances that, after ICE takes him into custody, he will be deported before he can be prosecuted, convicted (assuming that the government can prove its case against him), and sentenced in this court. See 8 U.S.C. § 1231(a)(4)(A) ("Parole, supervised release, probation, or possibility of arrest or further imprisonment is not a reason

_____

[2] "If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry." 8 U.S.C.A. § 1231(a)(5).

2

to defer removal."). Furthermore, he maintains that the government cannot meet its burden to prove that he is a risk of flight or danger to the community precisely because, once he is released to ICE, he will be in continuous custody until his inevitable deportation.

In this case, both the defendant and the government desire the court to consider the defendant's immigration status in deciding whether Lozano should be detained, although they argue for different results.[3] While the existence of an ICE detainer or deportation order is not explicitly enumerated by Congress as a factor that the court must consider in making a decision under 18 U.S.C. § 3142(e) as to whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, the statute provides that the court "shall ... take into account *the available information* concerning" the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
>     (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse,

---

[3] The government asks the court to treat the imminence of deportation proceedings as evidence that defendant is a risk of flight under the traditional analysis, but it would prefer the court, in gauging defendant's dangerousness and risk of flight, to overlook the fact that defendant will continue in ICE custody if he is released on conditions. Defendant asks the court to conclude that he is not a risk of flight or danger to the community because he will be detained continuously until his deportation, but he would prefer the court to overlook the fact that his immigration status will create a virtual certainty of nonappearance for trial if he is released under the Bail Reform Act. The court declines to turn a blind eye toward any portion of the relevant evidence.

criminal history, and record concerning appearance at court proceedings; and
(B) whether, at the time of the current offense or arrest, the person was
on probation, on parole, or on other release pending trial, sentencing, appeal,
or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community
that would be posed by the person's release.

18 U.S.C.A. § 3142(g)(emphasis added).

Most courts considering the question have determined that the defendant's

immigration status may be considered in the court's detention analysis.[4]  See, e.g., United

States v. Dozal,  2009 WL 873011, 3  (D. Kan. 2009) ("Defendant is a deportable alien. This factor

alone does not mandate detention, but it weighs heavily in the risk of flight analysis."); United States

v. Lozano-Miranda, 2009 WL 113407, 3 (D. Kan. 2009) (same); United States v. Garcia-Gallardo,

2009 WL 426040, 4 (D. Kan. 2009) (same); United States v. Sanchez-Valdivia, 2008 WL

5104688, 2 (D. Minn. 2008) (considering the fact that "in the event the Defendant remains

on release, he will be arrested by ICE and there is a substantial likelihood that he will

immediately be removed to Mexico, pursuant to the warrant of deportation, with no ability

---

[4]  18 U.S.C. §3142(d), which governs temporary detention of a non-citizen defendant, is
not to the contrary. It provides that, after the attorney for the government notifies ICE of the
temporary detention to permit deportation, "[i]f the official fails or declines to take such person
into custody during that period, such person shall be treated in accordance with the other
provisions of this section, *notwithstanding the applicability of other provisions of law governing
release pending trial or deportation or exclusion proceedings*."18 U.S.C. §3142(d)(emphasis
added). The court interprets this provision to permit release of a defendant under the Bail Reform
Act even if he or she is detainable under immigration laws. See United States v. Adomako, 150
F.Supp.2d 1302, 1307 (M. D. Fla. 2001) (Defendant "is not barred from release because he is a
deportable alien."). However, as the Adomako court observed, 18 U.S.C. §3142(d) does not
prohibit the court from considering a defendant's immigration status in its detention analysis. Id.
("An alien's INS history (to the extent that the government chooses to present it in support of its
motion for detention) is, however, a factor that this Court weighs heavily in the risk of flight
analysis under 18 U.S.C. § 3142(g)(3).").

4

by the United States to require him to stand trial and face the federal charges pending against him" among the §3142 factors); <u>United States v. Chavez-Rivas</u>, 536 F.Supp.2d 962, 964 n.3 (E.D. Wis. 2008) ("I do not suggest that courts should not consider a defendant's immigration status in evaluating whether he is a flight risk.") (citing <u>United States v. Adomako</u>, 150 F.Supp.2d 1302, 1307 (M.D. Fla. 2001) ("An alien's INS history (to the extent that the government chooses to present it in support of its motion for detention) is, however, a factor that this Court weighs heavily in the risk of flight analysis under 18 U.S.C. § 3142(g)(3)."); and <u>United States v. Neves</u>, 11 Fed.Appx. 6, 8 (1st Cir.2001) (noting that the existence of a deportation order is relevant to the issue of flight)); <u>United States v. Rembao-Renteria</u>, 2007 WL 2908137, 2 (D. Minn. 2007) ("In the Court's view, immigration status is not excluded as one of the factors that may be appropriately taken into account in deciding whether a defendant is likely to flee. The determination is an individual one as to each defendant.").[5] This approach is consistent with the legislative history of the Bail Reform Act, which indicates that "[t]he offense and offender characteristics that will support the required finding for pretrial detention under subsection (e) will vary considerably in each case. Thus, the committee has, for the most part, refrained from specifying what kinds of information are a sufficient basis for the denial of release, and has chosen to leave the resolution of this question to the sound judgement of the courts acting on a case-by-case basis." S. REP. 98-225, 18-19, 1984 U.S.C.C.A.N. 3182, 3201-3202

---

[5] <u>But see</u> <u>United States v. Barrera-Omana</u>, 2009 WL 2219080, *2 (D. Minn. 2009) ("Congress has not, of course, told a court to consider the existence of an ICE detainer among these factors. In this sense, the Court finds the ICE detainer is an externality not under defendant's control. As such, it must be excluded from the detention analytic.")

(1984). Accordingly, the court will consider defendant's immigration status along with all other available information in applying the § 3142(e) factors.

<u>Nature and circumstances of the offense charged</u>

The offense charged is not a crime of violence, a violation of 18 U.S.C. § 1591, or a Federal crime of terrorism, nor does it involve a minor victim or a controlled substance, firearm, explosive, or destructive device. The grand jury has found probable cause to indict defendant on the charge of reentry after a previous deportation subsequent to an aggravated felony conviction. Defendant faces a maximum term of imprisonment of 20 years.

<u>The weight of the evidence</u>

Defendant is a citizen of Mexico who was previously deported in 2007 and did not have permission to reenter the country. According to the pretrial services report, he reentered the United States on July 13, 2008, and was arrested in this country on September 4, 2009. At this time, the court is not aware of any defense that would forestall conviction on the current charge.[6]

<u>History and characteristics of defendant</u>

Defendant's relatives, including his parents and sister, live in Mexico. He is single and has no children. When he reentered the country, he lived by himself for three months in Atlanta, then stayed for approximately two months with his girlfriend in Cottonwood,

---

[6] Based on defense counsel's questioning during the detention hearing, the court infers that defendant may by pretrial motion seek to suppress certain Mirandized statements that he made when he was interviewed by immigration officials. However, the court has heard no evidence to date that would lead it to conclude that those statements are inadmissible.

Alabama. He is presently unemployed, but he previously worked as a laborer remodeling homes in Dothan and Enterprise, Alabama, earning $450 a week. He does not have an Alabama driver's license, and he has a prior traffic violation for failure to obtain a Georgia driver's license.

Defendant was convicted in 2004 in the Superior Court of Gwinnett County, Georgia of two counts of aggravated assault upon a peace officer, one count of obstructing or hindering of a law enforcement officer, one count of failure to stop at or return to the scene of an accident, one count of driving under the influence of alcohol, one count of fleeing or attempting to elude a police officer, two counts of criminal damage to property in the second degree, and one count of criminal trespass. The aggravated assault convictions involved a motor vehicle used offensively by the defendant in driving at and toward two different officers, and the obstructing and hindering conviction involved defendant's doing violence to an officer by fighting and physically resisting during the course of a lawful arrest. Defendant received concurrent sentences on all counts, with the longest sentence being five years' imprisonment and seven years' probation. Based on his convictions for aggravated assault, defendant was removed from the United States as an aggravated felon.

After his reentry to this country, defendant was convicted in Houston County, Alabama on August 28, 2009, of domestic violence 3rd harassment and sentenced to 21 days (that is, time served) in jail, fines, and court costs.[7] Ex. 2. Defendant was convicted under the

---

[7] Defendant contends that this conviction should not be given any weight because defendant was not provided with an interpreter or lawyer for this proceeding. However, the

name Luis Enrique Oriz, an alias. Id. When defendant was interviewed by an immigration official, he said that he was from Puerto Rico.

As noted above, defendant is the subject of a pending ICE detainer, and his deportation or removal from the United States has already been ordered. If he were released on conditions under the Bail Reform Act, defendant would be transferred to ICE custody by the United States Marshal, transported from this district, placed immediately in removal proceedings without the possibility of bond, and subjected to mandatory removal from the United States within a period of 90 days beginning on the date of his release.

Release on probation or parole at the time of the offense or arrest

The government's brief asserts that defendant was on state probation at the time that he allegedly committed the instant offense. Doc. #13 at 5. While the government presented no specific evidence to this effect at the detention hearing, it is a reasonable inference from the defendant's criminal history.

Nature and seriousness of the danger to any person or the community

Based on defendant's criminal history, he could pose a danger to the community on release – assuming *arguendo* that he was not transferred to ICE custody – if he drove while intoxicated, not only because of his use of alcohol but also because of (1) his strong motivation as an illegal alien to avoid arrest, as evidenced by his use of an alias and a false

---

legislative history of the Bail Reform Act indicates that "[r]ecords of arrest and conviction should be presented," but the committee did not intend "that the pretrial detention hearing be used as a vehicle to reexamine the validity of past convictions." S. REP. 98-225, 22, 1984 U.S.C.C.A.N. 3182, 3205 (1984).

place of birth, as well as his attempt to elude a police officer, and (2) his demonstrated disregard, while under the influence, for the safety of arresting officials and the community. He also could pose a danger of domestic violence in the form of harassment. In addition, he could pose a risk of re-offending while on probation.

In this case, the court concludes that the government has not established by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community, because it is undisputed that defendant would remain in ICE custody pending deportation to Mexico if he were released from this court. The United States also has failed to prove by a preponderance of the evidence that defendant is a flight risk – that is, a risk of escaping custody and, by that means, evading prosecution – given the apparent certainty of continuous ICE detention upon his release.[8] However, risk of flight is not the standard under § 3142(e)(1). The court finds that the government *has* met the correct standard, as it has established by a preponderance of the evidence that no condition or combination of conditions will *reasonably assure defendant's appearance as required* for prosecution under the instant indictment. § 3142(e)(1).

Any other result would do violence to the plain meaning of the statute, which this court may not disregard. United States v. Hoffman-Vaile, 568 F.3d 1335, 1343 (11th Cir.

---

[8] Arguably, defendant still could pose a danger to other inmates or to law enforcement, or a risk of attempted flight, if he were detained in ICE custody; however, the court finds this risk to be minimal under the circumstances. See United States v. Molina-Tepozteco, 07-cr-181 (PJS/SRN) at *6 (D. Minn. 2007)(Ex. A to defendant's Brief, Doc. # 12) (Defendant in ICE custody is not a danger to any other person or the community or a risk of flight).

2009) ("In statutory construction, 'the plain meaning of the statute controls unless the language is ambiguous or leads to absurd results.")(internal quotations omitted); see also United States v. Hurtado, 779 F.2d 1467, 1476-1477 (11th Cir. 1985). Further, this reading effectuates the very government interest that permits the imposition of pretrial detention or bail, and which underlies the statutory scheme – that is, the government's interest in securing the appearance of a defendant at trial. See United States  v. Salerno, 481 U.S. 739, 753 (1987) ("[A] primary function of bail is to safeguard the courts' role in adjudicating the guilt or innocence of defendants."); Stack v. Boyle, 342 U.S. 1, 5 (1951)("Since the function of bail is limited, the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant."); United States v. Medina, 775 F.2d 1398, 1402 (11th Cir.1985) ("The government's interest in securing the appearance of a defendant at trial is constitutionally sufficient to warrant pretrial detention where necessary to insure that the defendant will not flee the jurisdiction.")(citing Stack v. Boyle, 342 U.S. 1, 4 (1951)); United States v. Jessup, 757 F.2d 378, 380 (1st Cir. 1985) ("It is well established that the government can keep a defendant in custody to secure his presence at trial."); see also 8 C.F.R. § 215.3 (The departure of an "alien who is needed in the United States as ... a party to[ ] any criminal case ... pending in a court in the United States" is deemed prejudicial to the interests of the United States.").

Despite the plain language of the statute, defendant maintains that the court should carve out an exception when the government, not the defendant, has created the risk of nonappearance by a failure to coordinate between agencies within the Executive Branch.

Doc. # 12 at 8. This argument finds support in several cases in which courts have determined that a risk of flight under §3142 must involve an element of volition, not "a flight flown or paid for by a federal governmental agency." See United States v. Barrera-Omana, 2009 WL 2219080, 3 (D. Minn. 2009); see also United States v. Molina-Tepozteco, 07-cr-181 (PJS/SRN) at *6 (D. Minn. 2007)(Ex. A to defendant's Brief, Doc. # 12)("[T]he government argues that the *government itself* can create the likelihood that a defendant will not appear if he is not ordered detained under §3142(e). Putting aside the equities of the situation ... the government's argument that a judicial officer can order a person jailed because forces outside of his control might result in his nonappearance seems inconsistent in spirit (if not in letter) with §§3142(f) and 3142(g).") (emphasis in original).

The court cannot agree with defendant's position for several reasons. First, even assuming the relevance of volition to court's analysis of the risk of nonappearance, defendant's volition is far more nuanced than he admits. Forced deportation ordinarily might not be voluntary, but in this case defendant has concluded that it is immensely preferable to the alternative. Indeed, he expressly desires to be deported and, thereby, to defeat prosecution. Furthermore, if the government is correct that defendant reentered voluntarily after a prior removal and a promise not to return, a second removal of the defendant could hardly be construed as an event beyond his control. A one-dimensional view of defendant's volition simply is not meaningful under these circumstances.

Second, if volition is the issue, then it is the government whose metaphorical hands are tied in this case. The "failure to coordinate" between agencies of the Executive branch

11

(that is, the U. S. Attorney's office and ICE) is hardly the fault of that branch.[9] Congress, not the Executive, decreed that the defendant must be removed within 90 days of his release from confinement, and mandated that the possibility of further imprisonment is not a reason to defer removal. See 8 U.S.C. §§§§ 1231(a)(1)(A), (a)(1)(B)(iii), (a)(2), and (a)(4)(A). This court, not the Executive, has set defendant's case for trial at the earliest practicable time, on the term beginning October 20, 2009, in accordance with the Speedy Trial Act, 18 U.S.C. §3161 (that is, not more than 70 days nor less than 30 days from defendant's first appearance on September 8, 2009). Even if defendant were tried within 90 days of his release under the Bail Reform Act, he could not be sentenced during that period given the constraints of Fed. R. Crim. Pro. 32.  The Executive branch is powerless to change these rules or statutes.

Finally, and most importantly, the court rejects defendant's contention that defendant should not be held in custody where the government has created the risk of nonappearance because the statute itself does not recognize the source of or reason for this risk as a material consideration. It does not condition its operation on the volition of the parties, or provide for any exceptions to its mandates.[10] This is not to say that the *certainty* of detention and removal is irrelevant, and some courts have correctly declined to order detention where the outcome

---

[9] In this respect, the instant case differs from Barrera-Omana,. In that case,  the Executive, in the person of the Attorney General, desired to prosecute the defendant, while the same Executive, in the person of the Assistant Secretary of Homeland Security for ICE, possibly wished to deport him. The court is aware of no such "Executive Branch turf battle" in this case. Barrera-Omana, 2009 WL 2219080 at *4.

[10] In contrast, the Bail Reform Act expressly provides that uncontrollable circumstances preventing a person from appearing or surrendering after release on conditions is an affirmative defense to prosecution for failure to appear. 18 U.S.C. § 3146 (c).

of immigration proceedings was speculative. See United States v. Montoya-Vasquez, 2009 WL 103596, 3-4  (D. Neb. 2009)("The Bail Reform Act does not permit this court to speculate on the 'risk' that a defendant would not appear in this court due to his being removed from this country by the same government that is prosecuting him... .There is no predicting the actions of ICE because the defendant is not in its physical custody, and the ICE Immigration Judge will not address his eligibility for bail until he is in its physical custody. In other words, I cannot address the risk of ICE removing the defendant from the United States without speculating about what the Immigration Judge may do. Speculation is not evidence, much less preponderating evidence."); see also United States v. Lucas, 2008 WL 5392121, 3 (D. Neb. 2008)(reaching the same conclusion since the court could not address the risk of removal without speculating about what the immigration judge might do, as defendant had not yet been the subject of removal proceedings and there was no outstanding order of removal, but noting that "[t]his situation differs markedly from one in which a defendant has already been the subject of a removal order. *An outstanding order of removal would be strong evidence of likely nonappearance*.")(emphasis added). However, the certainty of the result of immigration proceedings bears only on the weight of this evidence, not on its admissibility on the subject of nonappearance.

Here, defendant Lozano presents the relatively unusual case of a defendant for whom detention and removal by the immigration authorities prior to the conclusion of prosecution appears to be a certainty. Accordingly, no condition or combination of conditions will reasonably assure the appearance of defendant as required, and the court therefore orders his

13

detention pursuant to 18 U.S.C. § 3142(e)(1). See United States v. Vasquez, 2009 WL 150661, 1 (D. Minn. 2009) (Detaining a defendant who was an aggravated felon subject to an outstanding deportation order upon its finding that defendant "presents a risk of nonappearance because he is currently in the United States illegally, has been deported once before and is subject to a pending deportation order."); United States v. Idais, 2005 WL 1527715, 4 (E. D. Pa. 2005) (Concluding "that there is a serious risk that Defendant would flee if he were released on bail by this Court and subsequently released on bail by an immigration judge," and that "there is a possibility that Defendant could be deported prior to trial if he were released on bail and returned to the custody of the ICE. Consequently, the Court finds that there is no condition or combination of conditions which will reasonably assure the appearance of Defendant as required.").

Therefore, it is ORDERED that the defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

Done, this 21st day of September, 2009.

14

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE