IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA )
)
v. ) CASE NO. 1:09-CR-158-WKW [WO]
)
JOSE LOZANO )
)

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on Defendant Jose Lozano's Motion to Review Detention Order (Doc. # 23), the Government's response to Mr. Lozano's motion (Doc. # 28), and Mr. Lozano's reply (Doc. # 31). After careful consideration of the applicable law, the parties' briefs, and the record as a whole, the court finds that Mr. Lozano's motion is due to be denied, and that the Magistrate Judge's order of detention (Doc. # 18) is due to be affirmed on supplemental grounds.

## I. FACTS AND PROCEDURAL HISTORY

Mr. Lozano is charged with Unlawful Reentry of a Removed Alien Subsequent to an Aggravated Felony Conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2).[1] (Doc. # 1.) The Immigration and Customs Enforcement ("ICE") division of the Department of Homeland Security has also issued a deportation order against Mr. Lozano. (Doc. # 11,

[1] Mr. Lozano's relevant history – immigration and criminal – is thoroughly detailed in the order of the Magistrate Judge.

Attach. 3.) The parties agree that, if Mr. Lozano were to be released from the custody of the United States Marshals Service pursuant to the Bail Reform Act, he would be transferred to ICE custody and subjected to immediate removal proceedings. 8 U.S.C. § 1231(a)(5). Indeed, the parties do not dispute that his release would likely result in his removal from the country, thus thwarting his prosecution under § 1326.

The Government moved to detain Mr. Lozano pending trial on the basis of serious risk of flight. (Doc. # 4 ("This case is eligible for a detention order because this case involves: [a s]erious risk the defendant will flee[.]").) The confidential pretrial services report recommended that he be detained because "[t]here are no conditions or combination of conditions to reasonably assure either the defendant's appearance in court or the safety of the community." The Magistrate Judge ordered Mr. Lozano detained, finding that although Mr. Lozano was neither a risk of flight nor a danger to the community, there were no conditions or combination of conditions that would reasonably assure his appearance. (Magistrate Judge Order (Doc. # 18).) [2] Mr. Lozano subsequently filed the Motion to Review Detention Order solely on the issue of risk of flight. (Doc. # 23.) The motion was briefed and under submission by October 29, 2009.

---

[2] Ten days after the order of detention was entered, Mr. Lozano filed an unopposed motion to continue trial on the bases of lack of time to prepare, a possible motion to suppress, the need for interpreter services, and the need to engage in plea negotiations. (Doc. # 19.) The motion was granted. (Doc. # 20.) Mr. Lozano did not mention the potential for the instant motion in the motion to continue. Nevertheless, the instant motion was filed two days after the court granted the continuance of the trial, which had been scheduled for October 20, 2009. The net result of this series of filings was a continuance of the trial to February 22, 2010, a continuance of, notably, more than 120 days.

## II. STANDARD

Pursuant to 18 U.S.C. § 3145(b), Mr. Lozano has moved for review by this court of the pretrial detention order entered by the Magistrate Judge. Section 3145(b) provides that a person who has been ordered detained by a magistrate judge "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order[,]" and that "[t]he motion shall be determined promptly." District courts are required to review magistrate judges' detention orders *de novo*. *United States v. Hurtado*, 779 F.2d 1467, 1481 (11th Cir. 1985). Thus, in this case, the Magistrate Judge's findings cannot be afforded any deference.

## III. DISCUSSION

This case concerns the complicated interplay among: (1) the Bail Reform Act of 1984, which sets the procedure for pre-trial release and detention; (2) 8 U.S.C. § 1326, which prohibits reentry of a removed alien subsequent to an aggravated felony and authorizes punishment up to twenty years imprisonment; and (3) 8 U.S.C. § 1231(a)(5), which requires the removal of an alien subject to a prior order of removal. As discussed further below, the Government, the Magistrate Judge, and Mr. Lozano present three competing interpretations of the Bail Reform Act. While the Government's and Magistrate Judge's interpretations allow the criminal prosecution to proceed, their interpretations would allow detention in all § 1326 prosecutions. However, the Bail Reform Act establishes release as the norm, and detention as the exception, except in enumerated serious crimes. *United States v. Salerno*,

481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."); *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention."). On the other hand, while Mr. Lozano's arguments provide a plausible interpretation of the Bail Reform Act, at least as some courts have interpreted it, his interpretation of the statute effectively prevents prosecution in most, if not all, cases under 8 U.S.C. § 1326. Thus, the court is faced with finding an alternative that is true to the Bail Reform Act while not hindering prosecution of criminal reentry laws or the enforcement of immigration laws.

**A. <u>The Bail Reform Act</u>**

The pretrial liberty interests of an accused are rooted in the presumption of innocence. "Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Stack v. Boyle*, 342 U.S. 1, 4 (1951). "Rules under which personal liberty is to be deprived are limited by the constitutional guarantees of all, be they moneyed or indigent, befriended or friendless, employed or unemployed, resident or transient, of good reputation or bad." *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (*en banc*). In contrast, the Government's sole pretrial detention interest has historically been securing the appearance of the accused to answer for the charges and submit to sentencing, if convicted. *Id*. ("The ultimate inquiry in each instance is what is necessary to reasonably assure defendant's presence at trial."). Such pretrial detention is regulatory, not penal. *Salerno*, 481 U.S. at 752. Similarly, detention on an

immigration detainer is administrative, not penal. *See generally Zadvydas v. Davis*, 533 U.S. 678 (2001). Whether detained without bail to appear to answer criminal charges, or detained under the immigration laws, the detainee is held by the Attorney General.

The Government's interest in securing the appearance of the accused is clearly and repeatedly imbedded in § 3142. The phrase "reasonably assure the appearance of the person as required" appears thirteen times in the section. By contrast, the Act only refers to flight twice, but as will be seen, its appearance is a show-stopper. Subsection 3142(e) provides, in material part, as follows:

> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial.

That is what happened here. After a hearing, the Magistrate Judge found that no condition or combination of conditions would reasonably ensure Mr. Lozano's appearance at trial, and ordered his detention. She found that the standard to be applied is reasonable assurance of appearance, not serious risk of flight. Indeed, she found that Mr. Lozano was not a serious risk of flight solely on the basis of the ICE detainer and the testimony of the ICE agent. In view of the undisputed fact that if Mr. Lozano were released on bail and immediately into the custody of ICE he would be deported and thus most likely would avoid prosecution, the Magistrate Judge's reasoning is attended with a certain penumbra of common sense that should play as well in the local Wal-Mart as in the halls of justice.

Challenging the ruling of the magistrate judge, Mr. Lozano insists that the standard is not reasonable assurance of appearance, but rather serious risk of flight, which appears in the *hearing* subsection of § 3142. Subsection (f) provides, in material part, as follows:

> (f) Detention hearing.–The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community–
>
> > (1) upon motion of the attorney for the Government, in a case that involves–
> >
> > > (A) a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
> > >
> > > (B) an offense for which the maximum sentence is life imprisonment or death;
> > >
> > > (C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;
> > >
> > > (D) any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or
> > >
> > > (E) any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon, or involves a failure to register under section 2250 of title 18, United States Code; or

> (2) Upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves–
>
> > (A) a serious risk that such person will flee; or
> >
> > (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

Because no (f)(1) ground exists here, the issue rests squarely on (f)(2), a serious risk of flight.

Mr. Lozano rightly posits the paradox that the *government* – in fact, the same branch of government that is prosecuting him – will be responsible for his non-appearance in criminal proceedings, and that risk of flight necessarily entails a volitional component on his part that is not here, and cannot exist while he is detained. Thus, Mr. Lozano concludes that, because he poses *no risk* of flight, much less a *serious risk*, he cannot be detained under § 3142(e).

**B. <u>The Immigration Issues</u>**

According to 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General *shall* remove the alien from the United States within a period of 90 days." (emphasis added). Section 1231(a)(1)(B)(iii) further states that the "removal period" begins upon the alien's "release[] from detention," and § 1231(a)(2) provides that, "[u]nder no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissable." Mr. Lozano is charged with Unlawful Reentry of a Removed Alien Subsequent to an Aggravated Felony Conviction, in violation of 8 U.S.C. § 1326(a)

and (b)(2).[3] The immigration statute states that "[i]f the Attorney General finds that an alien has reentered the United States illegally after having been removed . . . the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5). As a result, an illegal alien who was deported after having committed a felony and who reenters the United States illegally is automatically subject to the prior order of removal, which is revived by operation of law. Thus, because a defendant in Mr. Lozano's position must *always* be taken into the custody of ICE during the ninety-day removal period, rarely, if ever, will such a defendant pose a risk of flight or danger to the community. As the Magistrate Judge correctly concluded, "[i]t is undisputed that, if the court were to release the defendant on conditions pursuant to the Bail Reform Act, he would be transferred to ICE custody by the U.S. Marshal, transported from this district, and placed immediately in removal proceedings." (Magistrate Judge Order 2). If these facts do not support a finding that Mr. Lozano presents a "serious risk of flight," it would seem, as Mr. Lozano argues, that the court is bound to release Mr. Lozano into the custody of ICE. However, the implications of such a finding cannot be ignored.

Although there is no factual scenario under which Mr. Lozano could flee during his detention pursuant to the ICE detainer (absent escape from ICE's custody), there is similarly no factual scenario under which the court can reasonably assure Mr. Lozano's appearance

---

[3] Conviction under this statute could result in up to twenty years imprisonment. 8 U.S.C. § 1326(a)(2).

at trial after his deportation.[4] Essentially, by applying Mr. Lozano's interpretation, the court would give defendants charged with illegal reentry under 8 U.S.C. § 1326 a "get out of jail free" card. Congress could not possibly have intended the Bail Reform Act to nullify a substantive criminal statute.

## C. A Broader View of the Bail Reform Act

Based upon an analysis of the Bail Reform Act as a whole, it is clear that Congress did not anticipate the current factual scenario. But it also is clear that all three statutes – 18 U.S.C. § 3142, 8 U.S.C. § 1231(a), and 8 U.S.C. § 1326 – can be reconciled so as to give effect to all three statutory directives of Congress. *See Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.").

The Bail Reform Act gives courts express authority to order pre-trial release or detention. 18 U.S.C. § 3141 states that a judicial officer "shall order that [the defendant] be released or detained[] pending judicial proceedings," thus directing the court to order one or the other. The statute gives the court four specific options:

---

[4] No statutory or other authority has been cited by the Government, and the court is aware of none, that would permit a court to direct the Attorney General to stay or interrupt Ms. Lozano's deportation proceedings. Section 1231 contains no such allowance. *See also* 8 U.S.C. § 1252(g) ("[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.").

> [T]he judicial officer shall issue an order that, pending trial, the person be–
>
> (1) released on personal recognizance or upon execution of an unsecured appearance bond, under subsection (b) of this section;
>
> (2) released on a condition or combination of conditions under subsection (c) of this section;
>
> (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion under subsection (d) of this section; or
>
> (4) detained under subsection (e) of this section.

18 U.S.C. § 3142(a). Release under either (1) or (2) will in no way reasonably assure Mr. Lozano's appearance on this record; he will in all probability be deported before he can be tried and sentenced (if convicted). It cannot be argued seriously that the standard under (1) and (2) is anything other than reasonable assurance of appearance; the phrase appears six times in those two subparagraphs, and risk of flight makes no appearance.

Temporary detention under (a)(3), which cross-references subsection (d) ("Temporary detention to permit . . . deportation, or exclusion"), is the next listed alternative. 18 U.S.C. § 3142(d) states, in relevant part, as follows:

> If the judicial officer determines that – (1) such a person – (B) is not a citizen of the United States or lawfully admitted for permanent residence . . . and (2) such a person may flee or pose a danger to any other person or the community; such judicial officer shall order the detention of such person, for a period of not more than ten days . . . and direct the attorney for the government to notify . . . the appropriate official of the Immigration and Naturalization Service. If the official fails or declines to take such person into custody during that period, such a person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings.

Subsection (d) requires the court, upon finding that an alien presents a risk of flight or danger to the community, to detain him or her "for a period of not more than ten days," and to notify the appropriate immigration officials. § 3142(d). Only *if* the immigration official "fails or declines to take such a person into custody" does the court apply the other provisions of the statute. *Id*. Despite the Government's contention to the contrary, the language "notwithstanding the applicability of other provisions of law" applies only when the immigration official "fails or declines to take [the defendant] into custody" after a finding and ten day order. It may be argued that ICE has already taken action against Mr. Lozano as Congress required under § 1231(a)(5), by issuing a detainer, but the prior order of removal is revived by operation of law under the statute, and a detainer is a purely administrative tool to implement the prior order. In any event, neither party urges that (d) be applied in its entirety with the ten day detention and notice. The purpose of the ten day detention is to give notice to "the appropriate official" in ICE. It is obvious that ICE is aware of Mr. Lozano's whereabouts and circumstances as evidenced by the fact that its agent testified at the detention hearing. Therefore, the option of temporary detention in (a)(3) does not apply and is not available.

That leaves (a)(4) as the only viable alternative – detention under subsection (e). While subsection (e) again follows the "reasonable assurance of appearance as required" mantra, it adds a wrinkle, at least in Mr. Lozano's view: The detention hearing must be held "pursuant to the provisions of subsection (f) . . . ." Subsection (f), while again reaffirming

the "reasonable assurance of appearance as required" standard, allows a detention hearing "in a case that involves . . . a serious risk that such person will flee. . . ."[5] Because the Government's detention motion raises the issue of flight, the court finds that the case *involves* this issue, and that a detention hearing was properly held. That the court had to *find* a serious risk of flight in order to detain Mr. Lozano under subsection (e) is not clear from the language of the statute,[6] but what is abundantly clear is that the history and policy considerations underlying the bail analysis for centuries have revolved around the Government's substantial interest in securing appearance of the accused to answer for the charges. *See Stack*, 342 U.S. at 4-5. The Bail Reform Act, originally enacted in 1966, does not change that substantial interest in any way. The major change in the Bail Reform Act of

[5] One argument of Mr. Lozano, that risk of flight requires volition on his part, requires a comment. To the extent that is true, Mr. Lozano is estopped from claiming the benefit of the argument for two reasons. First, he volitionally returned to the United States in violation of a lawful order not to do so, and with the legal understanding that to do so (a) is a serious crime which would subject him to substantial punishment and (b) is a removable offense. Second, he asked for a continuance of his trial on grounds unrelated to and not mentioned in the instant motion, and then filed the instant motion immediately after the continuance was granted. The effect of these filings, if the court followed Mr. Lozano's interpretation of § 3142, would be to put him firmly within the 90 day deportation period required by § 1231(a)(1), ensuring his avoidance of criminal responsibility for his unlawful return.

[6] Other courts have noted the possibility for confusion created by the term "hearing" used in subsection (f). *See, e.g.*, *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988) (recognizing that the statute could be read broadly, requiring a risk of flight analysis only in connection with a *hearing* pursuant to subsection (f)); *United States v. Chavez-Rivas*, 536 F. Supp. 2d 962, 966 (E.D. Wis. 2008) (noting that "[t]he Bail Reform Act could be clearer on this issue").

1984, the current statute, was the addition of detention for dangerousness, not any alteration in reasonable assurance of appearance considerations.[7]

Upon consideration of § 3142 as a whole, it becomes clear that the term "release," as used in the statute, means "release from custody," not "release from the custody *of the Attorney General*." If the court were to apply the latter definition, subsections (a)(1) and (2) would be irrelevant in cases such as this one – the court has no power to release a defendant on personal recognizance, upon execution of a bond, or subject to the conditions the court creates. Here, the immigration statutes require the Attorney General to detain Mr. Lozano – detention has already been directed by law, and deportation has already been ordered. If the court releases Mr. Lozano from custody of the United States Marshals Service, his custody is transferred to ICE, but remains administrative and, more importantly, remains with the Attorney General. The Attorney General wears three hats here – United States Attorney, United States Marshal, and ICE. Thus, because Mr. Lozano cannot be released from custody altogether, the question is not *whether* Mr. Lozano should be detained, but *who* under the auspices of the Attorney General should detain him.

No version of the Bail Reform Act has specifically addressed a factual scenario under which release from the custody of the United States Marshals Service results in further

[7] "The 1984 Act marks a radical departure from former federal bail policy. Prior to the 1984 Act, consideration of a defendant's dangerousness in a pretrial release decision was permitted only in capital cases. . . . In all other cases, bail and other conditions of release were imposed solely to assure the appearance of the accused in court.

"Under the new statute, judicial officers must now consider danger to the community . . . . Furthermore, a defendant's dangerousness may serve as a basis for pretrial detention." *United States v. Himler*, 797 F.2d 156, 158-59 (3d Cir. 1986).

detention and a possibility of avoiding criminal prosecution altogether. The current Act, as well as its predecessor, was drafted in such a way so as to prevent *needless* detention and to protect the constitutional rights of criminal defendants.[8] The harm that Congress and courts have sought to avoid – needless pre-trial detention – does not apply in this case. In *Salerno*, the Supreme Court stated that "Congress' careful delineation of the circumstances under which detention will be permitted" serves to protect "the individual's strong interest in liberty." 481 U.S. at 750-51. Here, however, by ordering detention, the court is in no way restricting the defendant's liberty; Mr. Lozano will be detained by the Attorney General no matter what the court finds. The only congruous result is one that allows the United States Attorney to prosecute Mr. Lozano, and, upon his release (either after trial, if not convicted, or after the expiration of the period of imprisonment, if imposed), to allow ICE to take Mr. Lozano into custody for the purpose of deportation. The result protects the constitutional rights of the accused as well as the strong interest of the Government in reasonably assuring the appearance of Mr. Lozano as required, with the added benefit of giving full effect to the express language and known policies of all three congressional directives embodied in the statutes.[9] [10]

---

[8] The original Bail Reform Act of 1966 was enacted for the purpose of assuring "that all persons, regardless of financial status, would not needlessly be detained pending their appearance." *Pugh*, 572 F.2d at 1064.

[9] *See* 8 C.F.R. § 215.3 ("The departure from the United States of any alien within one or more of the following categories shall be deemed prejudicial to the interests of the United States. . . . (g) Any alien who is needed in the United States . . . as a party to[] any criminal case . . . pending in a court in the United States . . . .(h) Any alien who is needed in the United States in connection with any . . . proceeding being, or soon to be, conducted by any . . . judicial agency in the United States . . . . (k) Any

## IV. CONCLUSION

"It is ultimately the responsibility of this Court to ensure the integrity of its own judicial proceedings . . . ." *United States v. Robertson*, 608 F. Supp. 2d 89, 92 (D.D.C. 2009). The Magistrate Judge properly ordered Mr. Lozano's detention. The motion (Doc. # 23) is DENIED.

DONE this 16th day of November, 2009.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE

alien whose case does not fall within any of the categories described in paragraphs [above] inclusive, of this section, but which involves circumstances of a similar character rendering the alien's departure prejudicial to the interests of the United States.").

[10] It is also consistent with the recommendation of the Probation Office that Mr. Lozano be detained.